I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE, MOST RECENT, ADDRESS OF
RECORD, IN THIS ACTION, ON THIS DATE.

DATED: AUG 05 1999

DEPUTY CLERK

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

FILED
CLERK, U.S. DISTRICT COURT
AUG -3 1999
CENTRAL DISTRICT OF CALIFORNIA
BY                   DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
AUG -5 1999
CENTRAL DISTRICT OF CALIFORNIA
BY                   DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVID IDENTIFICATION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GLOBAL ID SYSTEMS; AND DOUGLAS E. HULL, <br><br> Defendants. | CASE NO. CV 98-4055 NM (CWx) <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

## I. Introduction

On May 22, 1998, plaintiff Avid Identification Systems, Inc. ("Avid") filed this action against defendants Global ID Systems ("Global") and Douglas E. Hull. The complaint asserted eight causes of action: design patent infringement, inducement of patent infringement, misappropriation of trade secrets, trademark infringement and unfair competition, interference with economic relationships, interference with prospective business advantage, violation of California's Business and Professions Code, and breach of fiduciary duty.

Four days later, plaintiff applied for a temporary restraining order and preliminary injunction. Judge Ronald S. Lew granted the TRO on May 29, 1998. On July 22, 1998, Judge Lew granted the preliminary injunction and restrained defendants Hull and Global from selling products allegedly infringing plaintiff's

patent pending trial of the action.

Plaintiff filed a motion to preclude defendants from introducing evidence concerning damages, affirmative defenses, or material allegations on December 14, 1998. On January 15, 1999, after defendants had failed to respond within the thirty-day limit, plaintiffs moved for partial summary judgment. This Court[1] granted plaintiff's motion on January 30, 1999.

On June 15, 1999, plaintiff filed the instant motion seeking partial summary judgment on its claims for patent infringement, trademark infringement and unfair competition, and violation of California's Business and Professions Code § 17200.

## II. Facts

The following facts are undisputed unless otherwise indicated.

Avid Identification Systems, Inc. sells radio frequency identification (RFID) products. These products allow users to track the movements of animals who have had transponder implanted; the transponder communicates with a Reader, which the user operates to determine the animal's location. End-users typically include animal control facilities, veterinarians, government agencies, and ranchers.

Avid, Inc. was granted patent No. 318,658 (the "'658 patent") for its identity tag reader design on July 30, 1991. See Complaint Exh. 1. Defendant disputes the validity of Avid, Inc.'s corporate existence at the time the patent was issued, see Opp. at 8 - 9; Hull Decl. (July 7, 1999) ¶¶ 3 - 5 & Exh. A. However, plaintiff has already obtained summary adjudication in this Court on defendants' affirmative defense disputing the validity of the assignment of the patent. See Thompson Decl., June 15, 1999, Exh. C.[2] Avid, Inc. assigned its interest in the

---

[1] The case was transferred to this Court on December 18, 1998.

[2] Thompson provided a declaration with supporting exhibits with both the motion for summary judgment and the reply brief. To distinguish them, citations to each include the date of

2


'658 patent to Avid Identification Systems, Inc. on May 21, 1998.

The trademark "Avid" was assigned by the USPTO to American Veterinary Identification Devices, Inc. on May 2, 1989. Complaint Exh. 4. American Veterinary Identification Devices assigned the mark to Avid Marketing, Inc. on August 15, 1994. Thompson Decl., July 12, 1999, Exh. 3 - 4. Avid Marketing, Inc. then changed its name to Avid Identification Systems, Inc. on May 21, 1997. See id. Exh. 5. Defendants dispute the legitimacy of this assignment by citing a certificate of nonfiling for the name "*America* Veterinary Identification Devices, Inc." (emphasis added), which they filed on July 10, 1998.[3] Plaintiff does not provide an explanation for this lack of record, other than to say that defendants should have included a copy of the certificate in their most recent set of pleadings. See Pl. Reply at 6 n.6. The "Avid" mark was registered with the California Secretary of State for state trademark protection on September 15, 1988 on behalf of Hannis L. Stoddard III, Avid's president. Stoddard assigned rights to the state mark to Avid Identification Systems, Inc. on May 20, 1998. See Harris Decl. Exh. 4.

Semiconductor Venture International ("SVI"), a company based in Thailand, initially assembled Avid's Readers. Assembly involved embedding circuitry in a plastic housing that embodied the design of the '658 patent and

---

submission.

It should be noted that plaintiff prevailed on its motion because defendants failed to file a timely response. Defendant Hull moved to vacate the Court's decision, but this Court denied the motion on June 21, 1999. See Order Denying Motion to Vacate Partial Summary Judgment (finding defendant's counsel's explanation of his tardy filing insufficient to meet the applicable "mistake, inadvertence, surprise, or excusable neglect" standard for reconsideration). Plaintiff's counsel seems to have a pattern of letting deadlines pass, then seeking to vacate the resultant judgment against his client. See Order Vacating Hearing re Default (issued by Judge Lew), Sept. 10, 1998.

[3]Defendants failed to include a copy of this certificate in their pleadings filed pursuant to the motion at issue.

market with plaintiff's patent and copyright notices. Final assembly, testing, inspection, and labeling of the Readers took place in Avid's California facilities. Pl.'s Facts ¶¶ 7 - 8.

Defendant Hull worked as Avid's Chief Operating Officer and Vice President of International Sales. Upset with the way Stoddard managed Avid, Hull left on October 29, 1997 to found his own business, defendant Global. As part of this business, he purchased RFID Readers from SVI that SVI had assembled for Avid. Thompson Decl., June 15, 1999, Exh. F, ¶ 8. What he did with these Readers is unclear; plaintiff contends that Hull sold them to a domestic Avid customer, while defendant counters that "Global offered to sell RFID units to buyers outside the United States. What the buyers did with them was outside Global's control." Def.'s Resp. to P's Statement of Uncontroverted Facts, No. 13. Global does not dispute selling Readers to Biomark, Inc., a company located in Idaho. Pl.'s Facts ¶ 14; Defs.' Response to Pl.'s Facts, ¶ 14 (denying the misrepresentation of the products but not the sale itself). Plaintiffs also allege that defendants sold RFID readers to Microchip Identification Systems, Inc. ("Microchip"), a Louisiana company. Microchip then resold them to Konnex International Limited ("Konnex"), which is located in Hong Kong. Troesch Decl., ¶ 25 & Exh. 5. Defendants dispute these allegations, see Defs.' Response to Pl.'s Facts, ¶¶ 15 - 16, but do not propose any contrary explanation for the evidence linking Global with Microchip and Konnex.[4]

### III. Discussion
#### A. Standard

---

[4]Indeed, defendants admit to selling Avid Readers to Konnex. See Opp. at 13 ("In the Konnex paperwork the products are identified as 'Global ID Standard Readers'. The products themselves are not counterfeit, but Avid Product that Avid had manufactured and assembled, then refused to take possession of or pay the manufacturer for.")

4

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a trio of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. See Celotex, supra; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986); Matsushita Electrical Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. The governing substantive law dictates whether a fact is material; if the fact may affect the outcome, it is material. See id. at 248, 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden with affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not disprove the other party's case. See Celotex Corporation v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When assessing whether the non-moving party has raised a genuine issue, the court must believe the evidence and draw all justifiable inferences in the non-movant's favor. See Anderson, 477 U.S. at 255, 106 S.Ct. at 2513 (citing Adickes v. S.H. Kress and Company, 398 U.S. 144, 158 - 59, 90 S.Ct. 1598, 1608 - 09

5

(1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Id. at 252, 2512. As the Supreme Court explained in Matsushita,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Id., 475 U.S. at 586 - 87, 106 S.Ct. at 1356 (citations omitted).

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed. R. Civ. P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

B. Analysis

*1. Plaintiff's patent claim*

Determining whether an infringement claim is meritorious involves two steps. First, the court must determine the meaning and scope of the patent asserted to be infringed. Once this is accomplished, the Court must determine whether the device accused of infringing falls within this construction of the claim. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995).

In the instant case, defendant has already stipulated to selling the product at issue. The only dispute, therefore, concerns whether plaintiff has a valid claim to the '658 patent. Patents are presumed valid. See 35 U.S.C. § 282. Under 35 U.S.C. § 282(1), a party claiming noninfringement or absence of liability for infringement must plead such an affirmative defense specifically. Pursuant to this Court's order of January 30, 1999, plaintiffs prevailed on their summary

6

adjudication motion invalidating defendants' affirmative defenses "for the reasons asserted therein." See Thompson Decl., June 15, 1999, Exh. C. One of these reasons was estoppel from challenging the assignment of the '658 patent. See Pl. Motion for Partial Summary Judgment at 13. While the fact that California has no record of a duly incorporated entity known as "Avid, Inc." is curious, as is plaintiff's failure to account for this absence, defendants have lost the opportunity to make this a central issue in their defense through their failure to respond to plaintiff's motion within the necessary timeframe.

Furthermore, defendant alleges that Hull, as one of the named inventors of the '658 patent, should have partial ownership in it, given that the named corporate entity on the patent application did not exist. A leading treatise confirms this logic: "Inventorship provides the starting point for determining ownership of patent rights. Thus, absent some effective transfer or other obligation to assign patent rights, the individual inventor owns the right to apply for and obtain a patent. Joint inventors jointly own that right." Donald S. Chisum, Chisum on Patents (1999) § 22.02 at 22-3. Unfortunately for defendants, Hull has already forfeited this right to claim ownership of the patent. Avid's First Set of Requests for Admissions, dated November 25, 1998, includes Request for Admission No. 3: "YOU assigned YOUR interest in the '658 patent to Avid, Inc." Thompson Decl., June 15, 1999, Exh. I. Defendants did not answer these requests until January 18, 1999. According to Fed. R. Civ. P. 36(a), a party has 30 days to respond to a request for admissions. If the party fails to serve its answer or objection within this limit, "[t]he matter is admitted." Thus, defendant Hull cannot claim partial ownership in the patent.

Given that, for purposes of this adjudication, plaintiff owns the '658 patent, the only issue remaining is whether defendant sold products using the '658 patent without plaintiff's permission. According to defendant Hull's response to plaintiff's request for admissions, he "sold products embodying the '658 patent

design without Avid's consent or authorization." Thompson Decl., June 15, 1999, Exh. L, ¶ 9. Furthermore, defendants' pleadings admit to having sold products with Avid markings to an Idaho company, Biomark. See Defs.' Opp. at 12.

Because patents must be presumed valid, defendants forfeited their chance to challenge plaintiff's ownership of the '658 patent, and defendant Hull has admitted selling products embodying the '658 patent without permission, the Court grants summary judgment for plaintiff on Count I of its complaint.

*2. Plaintiff's trademark claim*

As with its patent claim, defendants allege that plaintiff's federal registration of its trademark is invalid because the trademark was registered to "American Veterinary Identification Devices, Inc.," an entity that was not registered in California at the time the trademark was registered. See Notice of Lodging Original Certificates of Non-Filing, filed with the Court July 10, 1998.

"A certificate of registration is prima facie evidence of the validity of the mark and relieves the holder . . . of the burden of proving nonfunctionality and secondary meaning. It shifts the burden of proof to the contesting party, who must introduce sufficient evidence to rebut the presumption of the holder's right to protected use." Qualitex Company v. Jacobson Products Company, 13 F.3d 1297, 1301 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 159 (1995). A party who holds a valid trademark may bring an infringement claim against any entity who, without permission, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) (1997) (Lanham Act § 32).

Even if this Court were to accept the allegation that Avid's federal registration of its trademark is somehow defective, plaintiff can make out a Lanham Act § 43(a) claim for infringement of an unregistered mark. See Two

8

Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 776 (1992) (Stevens, J., concurring); see also Metro Publishing v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993). The only analytical difference in a case with an unregistered trademark is that the plaintiff must prove validity of the trademark and the defendant's infringing activity without the benefit of any presumptions. See J. Thomas McCarthy, McCarthy on Trademarks § 27:14 at 27-26 (1999).

McCarthy describes the elements of a Lanham Act § 43(a) claim for trademark infringement as follows: defendant "uses a designation or false designation of origin in interstate commerce and in connection with goods or services when the designation is likely to cause confusion, mistake, or deception as to" defendant's affiliation with another person or as to the origin of defendant's goods, and the acts damage plaintiff or are likely to do so. McCarthy on Trademarks § 27:13.

Likelihood of consumer confusion is the gravamen of both federal and commonlaw trademark infringement claims. See Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1403 - 04 (9th Cir. 1997). Plaintiff points to four of the eight factors mentioned in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979):[5] proximity of goods, similarity of marks, evidence of actual confusion, and intent of the alleged infringer. See Pl. Motion at 13. This test is misplaced in the instant case. Engaging in a contextual analysis to compare related marks in a dispute where defendant's sales of an unfinished version of plaintiff's *actual product* will not help to elucidate the matter. Defendant sold goods with plaintiff's mark — not a mark substantially similar to plaintiff's mark, but the mark itself — to Biomark.

---

[5] The Sleekcraft factors are: strength of mark, proximity of goods, similarity of marks, evidence of actual confusion, marketing channels used, type of goods and degree of care likely to be exercised by purchaser, defendant's intent in selecting the mark, and likelihood of expansion of product lines. See Sleekcraft, 599 F.2d at 348 - 49.

A more relevant likelihood of confusion analysis is described in Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837 (9th Cir. 1987): "Likelihood of confusion exists when customers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Id. at 845 (quoting Lindy Pen Co. v. Bic Pen Corp., 725 F.2d 1240, 1243 (9th Cir. 1984)) (internal quotation marks omitted). Defendant's intent in this likelihood of confusion determination is irrelevant. "A party claiming trademark infringement need not demonstrate that the alleged infringer intended to deceive customers." E. & J. Gallo Winery v. Gallo Cattle Co., 955 F.2d 1327, 1341 (9th Cir. 1992). The only effect of intent is to create a presumption of public deception. See id.

According to the undisputed allegations, the manufacturing of Avid Readers involves a final "assembly, testing, inspection, and labeling" step performed in Avid's California facilities. Pl.'s Facts ¶ 7. This step was not performed on the Readers that Global purchased from SVI and resold to at least one American customer. See id. ¶ 14. Thus, defendant sold a product *not* manufactured according to Avid's specifications bearing the "Avid" trademark. Because, based on the undisputed facts, likelihood of consumer confusion under this scenario is virtually assured, plaintiff must prevail on its motion for summary judgment as to the federal claim of trademark infringement.

Regarding its state trademark infringement claim, defendant acknowledges the legitimacy of plaintiff's state registration of the "Avid" trademark, see Def.'s Opp. at 12 ("There does seem to be a valid California Registered trademark."), but argues that California law cannot reach a transaction between a Thailand seller and an Idaho buyer. See Defs.' Opp. at 12.

Neither defendants nor plaintiffs have briefed this issue sufficiently. Defendants cite no authority for the proposition that a state trademark claim should not apply to them. Plaintiffs have not provided sufficient proof that any of

the infringing activities took place within California. Mere unsubstantiated allegations that "Hull initiated his activities when he was in California and operated Global ID Systems both from Thailand and from his home in Norco, California" are not enough to prevail on summary judgment. However, the original complaint alleges, and defendants admit, that "Defendant Global ID Systems is an unincorporated business of Defendant Douglas Hull, having a place of business in Corona, California, and which is doing business in the state of California." Complaint, ¶ 3; Answer to Complaint, ¶ 1. Moreover, Hull is presently suing Avid in California state court in a related matter, thus consenting to the jurisdiction of this state's courts and invoking the protections of its laws. Ultimately, however, this issue is of only tangential importance; because plaintiff prevails on the federal trademark claim, the violation of the state claim is mere surplusage.

*3. Plaintiff's state unfair competition claim*

Plaintiff lodges its final claim under Cal. Bus. & Prof. Code § 17200, a general provision defining "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." It is well-settled that "state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act." Cleary v. News Corp., 30 F.3d 1255, 1262 - 63 (9th Cir. 1994). Given the disposition of the Lanham Act claim elucidated above, and California's presumptive jurisdiction over defendant based on his answer to the complaint, plaintiff must prevail on this claim as well. Defendants contend that Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632 (1996) requires proof of a "patterns [sic] or course of conduct," see Opp. at 14, but they are mistaken; Podolsky imposes no such requirement. See id. at 647 - 49. Absent citation to any more convincing authority, defendants' proposition cannot be accepted.

11

## IV. Conclusion

Based on the foregoing, plaintiff's motion for summary adjudication on its patent infringement (Count 1), trademark infringement and unfair competition (Count 4) and violation of California Business & Professions Code (Count 7) claims is GRANTED.

IT IS SO ORDERED.

DATED: August 3, 1999

Nora M. Manella
United States District Judge